2015 OK 34

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Larry Douglas FRIESEN, Respondent.**

No. SCBD–6178.

Supreme Court of Oklahoma.

May 26, 2015.

Gina L. Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Mack K. Martin and Amber B. Martin, Oklahoma City, Oklahoma, for Respondent.

COMBS, V.C.J.

### FACTS

¶ 1 On March 21, 2014, a Criminal Information was filed in the United States District Court for the Western District of Oklahoma, against the Respondent, Larry Douglas Friesen (Respondent), an attorney and member of the Oklahoma Bar Association.[1] The Criminal information accused the Respondent of willfully failing to pay income and FICA taxes to the Internal Revenue Service (IRS). The Respondent withheld these taxes from his law office employees' wages in three quarterly periods of calendar year 2007 but failed to pay them in violation of 26 U.S.C. § 7203.[2] He was charged with one misdemeanor count for each of the three quarterly periods. Approximately one month later the Respondent entered into a plea agreement and pled guilty to the charges.

¶ 2 The United States Magistrate Judge entered judgment and sentence on September 25, 2014, accepting the Respondent's plea of guilty to all three counts. The sentence included thirty-six months of probation, including forty-five days of weekend incarceration beginning October 10, 2014, and one hundred and eighty days of house arrest beginning the first Monday following his last weekend of incarceration.[3] He was also required to use a GPS monitoring device during this period. During the one hundred and eighty day period, the Respondent was authorized to leave his residence for employment, among other things. In addition he was required to pay $209,673.00 in restitution and an assessment of $75.00. He was ordered to make monthly payments on the restitution equal to the lesser of $300.00 or 10% of his monthly income beginning thirty days after the end of incarceration.

¶ 3 The total agreed-to restitution amount was $320,000.00 and included interest, penalties and other "relevant conduct" which includes certain prior unpaid taxes. The Respondent was given credit for the amount he paid to the IRS ($110,327.00) prior to his plea agreement. This $110,327.00 included amounts owed for not only the three quarters for which he was charged but also included all the remaining quarters for calendar years 2006 and 2007. These additional quarters are also referred to as "relevant conduct."

¶ 4 The Government's Sentencing Memorandum filed in the Respondent's criminal case shows he failed to pay employment taxes for various quarters in calendar years 1999 through 2001 and 2003 through 2007. This document also reflects his law firm had not filed corporate tax returns for 2000, 2001, and 2002 but eventually did so in 2003 after being contacted by the IRS. The Memorandum indicates the IRS had many contacts with the Respondent and his employees since 2002 to discuss the collection of these delinquent taxes. The IRS also sent notices and

---

1. *United States v. Friesen,* Case No. M–14–114–E (WDOK).

2. 26 U.S.C. § 7203, provides:
 Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution. In the case of any person with respect to whom there is a failure to pay any estimated tax, this section shall not apply to such person with respect to such failure if there is no addition to tax under section 6654 or 6655 with respect to such failure. In the case of a willful violation of any provision of section 6050I, the first sentence of this section shall be applied by substituting "felony" for "misdemeanor" and "5 years" for "1 year".

3. The Respondent stated in his Notice of Completion of Incarceration Portion of Federal Sentence that he completed the forty-five days of weekend incarceration on Sunday, January 18, 2015. Therefore, the one hundred and eighty days of house arrest began on Monday, January 19, 2015, and should end on Friday, July 17, 2015.

letters to the Respondent warning him about his taxes in the calendar years 2002 through 2005. The Memorandum shows that at least in calendar years 2006 and 2007 he had other funds to pay his taxes. It notes he paid a contractor in those years to remodel his residence as well as his office for an amount totaling $35,336.00. In addition, the Memorandum states for the calendar years of 2005 through 2007 his annual gross business receipts exceeded $400,000.00 in each year.

¶ 5 The parties to the criminal action agreed that the tax loss would only include those taxes unpaid in all quarters of calendar years 2006 and 2007, which totaled $110,327.00. Based on this amount, the federal sentencing guidelines formula recommended a sentence of twelve to eighteen months incarceration. The federal district court, however, chose a sentence below the advisory guideline range. In its Statement of Reasons, the court said:

> These offenses are financial crimes with the IRS being the only victim. Defendant plead guilty to three (3) counts of failure to pay taxes and has made full restitution for the tax loss covered by the three count Criminal Information. Over the past 30 years Defendant has no criminal history, other than a 2009 misdemeanor conviction for which he received a probationary sentence. Defendant has served his community and volunteered his services in law related activities. Defendant submitted over 20 letters of support from local attorneys, law enforcement, and others attesting to his good character and value to the community.

> The sentence imposed affords adequate deterrence to criminal conduct and serves to provide restitution to the victim of the offense. Defendant, if given any more than weekend incarceration, would likely lose his license to practice law, thereby dramatically reducing the ability of the victim to obtain full restitution. Defendant's sentence of 3 years probation and his continued employment will assure that regular restitution payments are made. If during the lengthy probationary sentence, Defendant fails to make these payments or otherwise violates the conditions of his pro-

bation then he faces the prospect of a lengthy imprisonment and the loss of his license to practice law.

¶ 6 On September 29, 2014, the General Counsel for the Oklahoma Bar Association (Complainant) forwarded certified copies of the federal criminal case to this Court pursuant to Rule 7.2, RGDP. On October 13, 2014, this Court ordered an immediate interim suspension of the Respondent from the practice of law. The Respondent chose not to challenge his interim suspension but did request a hearing to present mitigating evidence. An evidentiary hearing was held before the Professional Responsibility Tribunal (PRT) on December 18, 2014.

¶ 7 At the evidentiary hearing, the Respondent presented two main factors as mitigation to show why he had not paid the taxes. The first factor concerned the embezzlement of significant funds by his CPA. The second factor concerned his legal fees for representation in a 2008 federal indictment. In addition, the Respondent provided positive testimony from local judges, lawyers and other professionals concerning his legal abilities.

¶ 8 The Respondent's first main mitigating factor concerned his CPA. In 1988, Respondent hired a CPA, Judy Poltera. Poltera's duties included paying all the office bills and preparing as well as paying taxes including payroll taxes. She had the final decision making authority as to when and if employment taxes would be paid to the IRS. In 1998, Poltera was involved in a serious car accident which enhanced an existing medical condition. She began taking prescription pain killers and had many doctor appointments. She subsequently lost another job where she had health insurance and eventually lost that health insurance. She testified she embezzled money from the Respondent's operating account and even took out a mortgage on the Respondent's home without his knowledge to pay for her medical treatment and medication. Poltera was also authorized to accept correspondence and phone calls from the IRS and to meet with them as needed. She testified she told the Respondent she would take care of any problems and "it would be okay." She also testified she did not believe the Respondent knew of

the details of her meetings with the IRS. In 2005, when Poltera realized she could no longer hide her embezzlement she quickly left the law firm.

¶ 9 After Poltera left, the Respondent went to her office and discovered she had not paid all the federal and state taxes owed from 1998 to 2005 and she had not been paying office bills. The amount of unpaid office bills alone amounted to approximately $150,000.00. In addition, he discovered she had taken out a mortgage in excess of $100,000.00 on his residence, which he eventually lost in foreclosure.

¶ 10 The second mitigating factor concerns his legal fees in defense against a 2008 federal indictment. Prior to 2003, the Respondent had represented members of the Outlaw motorcycle club. The motorcycle club had been under investigation by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). After that investigation, the ATF conducted another investigation of the Respondent who was a gun enthusiast as well as a former gun dealer. The ATF discovered a World War II English Sten fully-automatic submachine gun the Respondent had legally purchased. The submachine gun had been shipped from England but apparently a wrong serial number had been recorded when it was shipped. In 2004, a search warrant was issued and the ATF searched the Respondent's house and office and confiscated the submachine gun. In 2007, the case against him "started gearing up" and in 2008, the Respondent was indicted for this recording error. He went to trial which resulted in a mistrial and afterwards the government tried to negotiate a plea. The Respondent testified the government discovered he had also failed to properly record a gun he legally purchased from a local gun dealer. Because the Respondent had been a gun dealer he was required to keep a separate log of guns he owned personally from the ones his business owned. He stated he failed to note the gun purchase on his individual registry. The government agreed to drop the felony charges concerning the submachine gun in exchange for a plea of guilty to a misdemeanor improper record-keeping charge on the gun he purchased locally.[4] The Respondent accepted and pled guilty in 2009. The Respondent testified he spent approximately $250,000.00 on legal representation and experts during the period between 2007 through 2009. In 2009, he also received a private reprimand from the Professional Responsibility Commission of the Oklahoma Bar Association for his plea of guilty to the misdemeanor charge.

¶ 11 Following the discovery of unpaid bills in 2005, the Respondent testified he had to make tough decisions on what could be paid. The Respondent's attorney coined his situation as being in a "perfect storm" of financial duress. The Respondent was upside down because of his accountant's embezzlement and he was faced with losing his livelihood, license and freedom if he did not defend himself against the federal gun indictment. The Respondent admits that after his CPA left and during 2006 and 2007 he had control over the firm's finances and had the final decision making authority as to when and if bills would be paid. He testified he believed he would pay the back taxes once his financial situation was stabilized. In order to pay those back he had to keep the law office open which also meant he had to pay the unpaid office bills. Further, he had to defend himself in the federal gun case or he would lose his freedom and not be able to pay the taxes. The Respondent testified that at the time there was not enough money to do both.

¶ 12 The Respondent testified he was able to begin making regular tax payments after his 2009 plea in the federal gun case. He testified that after his gun case was completed he not only paid back the $110,327.00 but also paid another $130,000.00 towards state and federal taxes. He also stated he believed for the period of 2009 through 2014, with the exception of maybe one or two payments, his firm is current on state and federal employment taxes for that period. He is also making the ordered restitution payments.

¶ 13 The Respondent testified he has taken significant remedial steps to correct his law office management. In 2012, he was able to afford a professional office manager. The

4. A violation of 18 U.S.C. § 922(m).

office manager placed the Respondent on a strict budget and established procedures to keep the Respondent informed of his office's finances. Now, he receives weekly, monthly and quarterly reports concerning payments leaving the office, including tax payments, and accounts receivable as well as a reconciliation sheet for the firm's bank accounts.

¶ 14 At the hearing, several witnesses testified on the Respondent's behalf. These included attorneys and judges who attested positively to the Respondent's reputation as a practitioner and to his integrity in dealing with the court and other lawyers. In addition, evidence was presented concerning the Respondent's contributions to the profession over the years which included volunteer and educational activities.

¶ 15 The Respondent took responsibility and expressed remorse and embarrassment for his actions. He said he was lackadaisical and "was enjoying the practice of law but was not taking care of the business of law." He also understood the disrepute his conviction brought to the bar and felt very bad for having caused it. In addition, the Respondent stated he complied with Rule 9.1, RGDP and notified his clients and withdrew from his cases following his suspension. He testified he has not been practicing law since his October suspension. He currently works as a paralegal and has obtained other counsel to work with his former clients who have not otherwise found counsel. The Respondent testified he has kept current with his continuing legal education. In addition, the Oklahoma Bar Association's investigator also testified that the Respondent had fully cooperated in the investigation.

¶ 16 In the Complainant's closing argument before the PRT it recommended the Respondent's interim suspension should continue until this Court makes a ruling which it believed should be a sufficient amount of time and one that most likely would be in excess of six months.[5] In the Respondent's attorney's closing argument he reminded the Trial Panel that his client's convictions did not arise out of the practice of law and they have not caused any harm to any of his clients nor were they the result of any violence, alcohol or drug abuse.

¶ 17 On February 19, 2015, the Trial Panel filed its report. After consideration of all the mitigating factors, it recommended the Respondent's interim suspension be lifted and he receive a deferred suspension of two years and one day subject to compliance with his probation. It recommended that if the Respondent violated the terms of his probation, the General Counsel of the Oklahoma Bar Association should be directed to immediately notify this Court and the suspension of two years and one day should be imposed from the date of the violation.[6]

## STANDARD OF REVIEW

¶ 18 This Court is vested with exclusive and original jurisdiction over attorney disciplinary proceedings.[7] We exercise the responsibility to decide whether attorney misconduct has occurred and what discipline is appropriate, not for the purpose of punishing the attorney, but to assess his or her continued fitness to practice law and to safeguard the interests of the public, the courts, and the legal profession.[8] Each aspect of a Rule 7, RGDP proceeding is reviewed de novo.[9] One of the purposes behind exercising discipline is to provide deterrence to the offending lawyer and other members of the bar.[10]

5. In its Brief in Chief, the Complainant changed its recommendation. The Complainant recommends the Respondent be suspended until he is no longer on house arrest, approximately July 17, 2015, and thereafter be subject to a deferred suspension for the remainder of his probation.

6. The Trial Panel cited *State ex rel. Oklahoma Bar Ass'n v. Bernhardt*, 2014 OK 20, 323 P.3d 222, a case involving a plea of guilty to felony DUI, where a similar discipline was pronounced.

7. *State ex rel. Oklahoma Bar Ass'n v. Cooley*, 2013 OK 42, ¶ 4, 304 P.3d 453; *State ex rel. Oklahoma Bar Ass'n v. Hart*, 2014 OK 96, ¶ 6, 339 P.3d 895.

8. *State ex rel. Oklahoma Bar Ass'n v. Wilburn*, 2006 OK 50, ¶ 3, 142 P.3d 420.

9. *Hart*, 2014 OK 96 at ¶ 6, 339 P.3d 895.

10. *State ex rel. Oklahoma Bar Ass'n v. Livshee*, 1994 OK 12, ¶ 12, 870 P.2d 770.

## FITNESS TO PRACTICE LAW

 ¶ 19 The Respondent argues that based upon the subject tax offenses, the circumstances, and the mitigating evidence, a finding of unfitness to practice law is not appropriate here. The Respondent notes that in our cases where we have held a violation of state or federal tax laws demonstrates unfitness to practice law the attorney had failed to file a tax return or had other included offenses. He asserts he was charged with failing to pay taxes and not for failure to file a tax return.

¶ 20 In *State ex rel. Oklahoma Bar Ass'n v. Hart*, 2014 OK 96, ¶¶ 10–11, 339 P.3d 895, this Court recognized that a criminal conviction does not, *ipso facto*, require an automatic finding of unfitness under the Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A or the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2011, Ch. 1, App. 3–A. In *State ex rel. Oklahoma Bar Ass'n v. Livshee*, 1994 OK 12, ¶ 8, 870 P.2d 770, this Court held when a lawyer willfully fails to file a tax return, he or she appears to the public to be placing himself or herself above the law. We determined, "[a] lawyer's willful failure to file an income tax return is a breach of professional responsibility that tends to discredit the legal profession in the eyes of the public." *Livshee*, 1994 OK 12 at ¶ 13, 870 P.2d 770. The Comments to Rule 8.4, ORPC provide "[m]any kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving ... willful failure to file an income tax return." In *State ex rel. Oklahoma Bar Ass'n v. Spradling*, 2009 OK 39, ¶ 8, 213 P.3d 570, another case concerning a failure to file a tax return, we held "[a] lawyer's disregard of federal law demonstrates a lack of dedication to and respect for the laws and for the government which lawyers are sworn to uphold." In *Spradling*, we were concerned that such failure to comply with federal law undermined public confidence in lawyers and damaged the public perception that lawyers are a community of law-abiding practitioners. *Spradling*, 2009 OK 39 at ¶ 8, 213 P.3d 570.

¶ 21 The record indicates during the calendar years 2006 and 2007 the Respondent filed quarterly employment tax returns with the IRS but intentionally decided not to pay those taxes. The record also reflects during that period the Respondent withheld employment taxes from his paycheck and the paychecks of his employees. Although he did not try to deceive the IRS by failing to file his quarterly returns, he had no intention of paying those amounts at the time he filed the returns. The Respondent instead intended to pay the back taxes owed in the future when his affairs were stable. Even though we are not dealing with a failure to file a tax return, which as mentioned does reflect upon an attorney's fitness to practice law, we have here repeated violations of federal law. Employment taxes for the eight quarters during 2006 and 2007 were intentionally unpaid. The taxes withheld from paychecks went to pay the Respondent's legal fees on the federal gun case and towards keeping his law office open and possibly to other expenses of questionable necessity, such as fees to a contractor for remodeling his office. The Comments to Rule 8.4, ORPC provide "[a] pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." Failure to pay employment taxes cannot be considered a minor offense and here the offense occurred repeatedly.

¶ 22 Additionally, the record reflects there were many other years prior to 2006 where taxes went unpaid. The Respondent's excuse is that he was not effectively managing his law office.[11] Management of one's law office is at the core of an attorney's ability to practice. We find such failure to pay taxes, especially after withholding those taxes from employee paychecks, reflects adversely on the Respondent's fitness to practice law.

## DISCIPLINE

 ¶ 23 Discipline is determined on a case-by-case basis, however, in imposing discipline we consider the discipline imposed in our previous decisions concerning like misconduct. *State ex rel. Oklahoma Bar Ass'n v. Givens*, 2014 OK 103, ¶ 18, 343 P.3d 214; *State ex rel. Oklahoma Bar Association v. Edwards*, 2011 OK 3, ¶ 20, 248 P.3d 350. In

---

11. The Respondent testified prior to 2006 he relied on his CPA to manage and take care of the law office's finances. He stated it was his responsibility to manage and he had stopped managing. (Tr. of the proceedings held on December 18, 2014, at 52).

our jurisprudence, where an attorney has violated a tax law without harming a client or committing any other offense discipline has been more yielding.[12] However, where a tax offense was only one of many offenses committed by an attorney the discipline imposed has been more severe.[13]

¶ 24 In *State ex rel. Oklahoma Bar Ass'n v. Livshee,* an attorney pled guilty to one misdemeanor count in federal court for willful failure to file an income tax return and received two years of probation. 1994 OK 12, ¶ 2, 870 P.2d 770. Thereafter, on September 13, 1993, this Court entered an order of interim suspension. This Court considered mitigating factors when determining the appropriate discipline. The Professional Responsibility Tribunal found the following mitigating factors:

(1) Livshee complied fully with this court's post-conviction order of interim suspension and with all other rules governing him while under suspension; (2) he has refrained from practicing law; (3) his offense of willful failure to file a tax return does not reveal any elements of "deception and dishonesty;" (4) Livshee readily admitted his wrongdoing; (5) at the time of his criminal omission Livshee did not have the money to pay the taxes then due the government; (6) the acts of which he stands convicted neither relate to his practice of law nor did they harm any of his clients or other individuals; (7) at the time of the PRT hearing Livshee had filed all his tax returns; (8) while he then owned (sic) in taxes between $50,000 and $55,000, he was making arrangements for a payout.

*Livshee,* 1994 OK 12 at ¶ 10, 870 P.2d 770.

This Court also noted the parties' stipulation that Livshee had never been previously disciplined. *Livshee,* 1994 OK 12 at ¶ 6, 870 P.2d 770. We disagreed with the PRT's finding that failure to file a tax return did not relate to the practice of law. However, we held the length of time from the interim suspension order to the date of our final discipline, January 25, 1994, was "long enough to constitute an adequate disciplinary sanction for the misconduct of which he was convicted." *Livshee,* 1994 OK 12 at ¶ 14, 870 P.2d 770. No further discipline was ordered.

¶ 25 Here we are confronted with multiple misdemeanor counts for failure to pay taxes in violation of federal tax laws. The Respondent was not convicted of any other offenses nor is there any evidence that his clients were harmed by his actions. The Respondent has taken important remedial steps to improve his law office management, especially concerning its finances. He has already paid nearly a quarter of a million dollars in back taxes. The United States Magistrate Judge tailored the Respondent's sentence so that even on house arrest he could practice law if his suspension was lifted. The judge understood that allowing the Respondent to practice would greatly increase his chance of paying the restitution. Many testified concerning the Respondent's practice of law including several judges. All gave favorable testimony. The record also reflects the many services he has provided to the legal profession above and beyond his daily practice. In addition, the Respondent has complied with Rule 9.1, RGDP and has also refrained from the practice of law since his interim suspension. Although the record

12. *State ex rel. Oklahoma Bar Ass'n v. Livshee,* 1994 OK 12, 870 P.2d 770 (an attorney was suspended for the period beginning with the order of interim suspension to the pronouncement of final discipline); *State ex rel. Oklahoma Bar Ass'n v. Spradling,* 2009 OK 39, 213 P.3d 570 (an attorney was suspended for the period beginning with the order of interim suspension to the pronouncement of final discipline); *State ex rel. Oklahoma Bar Ass'n v. Strickland,* 2011 OK 54, 256 P.3d 76 (an attorney received a public censure); *State ex rel. Oklahoma Bar Ass'n v. Gann,* 1995 OK 48, 895 P.2d 726 (an attorney received a public censure).

13. *State ex rel. Oklahoma Bar Ass'n v. Hart,* 2014 OK 96, 339 P.3d 895 (an attorney convicted of a felony and multiple misdemeanor offenses, one of which was failure to pay state tax obligations, was suspended for two years and one day); *State ex rel. Oklahoma Bar Ass'n v. Wolfe,* 1996 OK 75, 919 P.2d 427 (an attorney was found to have twenty-four violations of the ORPC and RGDP and additionally had not filed tax returns for three years. He was suspended for two years and one day); *State ex rel. Oklahoma Bar Ass'n v. Stewart,* 2003 OK 13, 71 P.3d 1 (an attorney was suspended in several bankruptcy courts for failure to disclose fees in violation of federal law, she was convicted in federal court of contempt for the same conduct, and she had failed to file a tax return. This Court suspended her for four years from the practice of law).

reflects the Respondent received a private reprimand in 2009 for his plea to a federal misdemeanor, we find no value in enhancing his discipline for the mistake of incorrectly recording a gun he purchased in the wrong log.

¶ 26 We believe the Respondent's lesson from failing to pay his tax obligations will deter other attorneys from following that path. The period of interim suspension, which began when this Court issued its order on October 13, 2014, will end when this pronouncement becomes final and effective. However, based upon the facts of this case, we defer the imposition of final discipline for so long as Respondent remains on probation, under the terms of probation imposed by the Court in *United States v. Friesen,* Case No. M–14–114–E (WDOK). We reserve the right to revisit the discipline imposed today if the Respondent violates the terms of his probation in *United States v. Friesen,* Case No. M–14–114–E (WDOK). The full panoply of discipline shall be available to this court should there be a finding of a violation of the terms of his probation. Respondent is directed to notify the General Counsel of the Oklahoma Bar Association, within 10 days, if a motion to revoke or accelerate his probation is filed by the federal authorities. The General Counsel shall immediately notify this Court upon learning of such filing. The Claimant has filed an Application to Assess Costs against the Respondent for the amount of $1,854.56. Our opinion herein shall be effective, so as to allow the Respondent resumption of law practice, when the costs of this proceeding in the amount of $1,854.56 have been paid and its remittance documented by the Oklahoma Bar Association filing a receipt in this court.

**RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FROM THE DATE OF THIS COURT'S ORDER OF INTERIM SUSPENSION TO THE EFFECTIVE DATE OF THIS PRONOUNCEMENT FURTHER DISCIPLINE MAY BE IMPOSED UPON VIOLATION OF HIS PROBATION AND IMPOSITION OF COSTS**

¶ 27 REIF, C.J., COMBS, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, and COLBERT, JJ., concur.

¶ 28 TAYLOR, J., dissents: "The Respondent should not be allowed to practice law while he is on federal criminal probation."

¶ 29 GURICH, J., not participating.