STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WAGNER
2022 OK 13
503 P.3d 1201
Case Number: SCBD-7041
Decided: 02/01/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 13, 503 P.3d 1201

 
 

STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
BRECKEN A. WAGNER, Respondent.

PROFESSIONAL DISCIPLINARY PROCEEDING

¶0 Respondent is an attorney licensed to practice law as a member of the Oklahoma Bar Association. A jury found respondent guilty of a misdemeanor, false reporting of a crime, and respondent was fined $500.00. The Judgment and Sentence of respondent's misdemeanor conviction was filed in this Court by the Oklahoma Bar Association for the purpose of this Court imposing summary discipline based upon respondent's conviction. We hold: (1) Two filings herein previously sealed by the Court shall remain sealed; and (2) Respondent's conviction does not demonstrate unfitness to practice law and the Oklahoma Bar Association's application for summary discipline is denied.

APPLICATION FOR FINAL SUMMARY DISCIPLINE DENIED

Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Debbie Maddox, Oklahoma City, Oklahoma, for Respondent.

EDMONDSON, J.:

¶1 Respondent is an attorney licensed to practice law and a member of the Oklahoma Bar Association. This proceeding was commenced by the Oklahoma Bar Association pursuant to Rules Governing Disciplinary Proceedings (RGDP), Rule 7.1, due to respondent's conviction for the misdemeanor of false reporting a crime in violation of 21 O.S.2011, § 589

I. Respondent's Conduct and Conviction

¶2 The McAlester Fire Department arrived at a residence to extinguish a fire in its kitchen. An adult female left the residence after stating to a fireman she needed to pick up children at school. A fireman checked for additional fire or persons while moving through the residence and he observed "a possible handgun" on a bed near "drug paraphernalia." The fire department requested the presence of a police officer because of this observation. The fire department continued to work at the scene.

¶3 A responding police officer from the McAlester Police Department arrived and was told an adult female resident previously left the open premises. The police officer was led into the open residence and shown the location of the observed handgun and drug paraphernalia. The police officer exited the residence and telephoned an investigative officer so that the investigator could obtain a search warrant.

¶4 The woman who left the residence telephoned the owner of the residence, S.D., and the owner arrived at the residence accompanied by another individual, B.B., who was identified as a purchaser of the residence. The owner did not reside at the residence at that time. Firemen and police officers were at the residence when S.D. and B.B. arrived, and both individuals were denied access to inside the residence while the police and fire personnel were securing the residence and working the scene of a fire.

¶5 The respondent arrived at the residence and he had a discussion with S.D., B.B., and a police officer. The police officer informed respondent what had been observed in the residence and a police investigation had commenced. The officer directed respondent to leave the premises. Respondent stood on the street adjacent to the residence and telephoned his law partner. Respondent's law partner went to the Pittsburg County Courthouse and appeared before an Associate District Judge for the purpose of making objections to the application for a search warrant of the residence. The judge signed the search warrant after hearing an informal argument from respondent's law partner.

¶6 The respondent returned to the residence from the adjacent street, learned a search warrant had been obtained, and he asked a police officer for a copy of the search warrant for the non-resident owner of the residence. The police officer told respondent a search was commencing, declined to give respondent a copy of the search warrant at that time, and respondent was told he should leave the residence or be arrested.

¶7 Respondent returned to the adjacent street and telephoned the McAlester Police Department. He identified himself as the caller and the owner of the residence as the complaining party for the purpose of his telephone report. Respondent requested a trespass charge be lodged against the police officers executing a search at the residence because he requested a copy of the search warrant and was not provided a copy from the officers at the residence. Respondent then spoke briefly with an investigator at the residence, and respondent left the scene while the police officers continued their search.

¶8 The search occurred on September 16, 2020. A few weeks later on November 3, 2020, respondent was arrested by several McAlester police officers inside the Pittsburg County Courthouse as he left a courtroom after appearing for a client in a different matter. A jury trial of four days was held in the District Court of Pittsburg County on two misdemeanor counts against respondent, obstructing an officer (21 O.S. § 54021 O.S. § 589

II. Filings in Respondent's Disciplinary Proceeding

¶9 The Oklahoma Bar Association (the Bar) filed with the Chief Justice a notice and certified copies of respondent's criminal conviction and sentence. Rule 7 of the Rules Governing Disciplinary Proceedings provides a summary procedure for conducting disciplinary proceedings based upon a lawyer's criminal conviction.

¶ 10 Rule 7 also provides the Court "may by order immediately suspend the lawyer from the practice of law until further order of the Court," or alternatively "may direct the lawyer to file a statement, to show cause, if any the lawyer has, why an order of immediate interim suspension from the practice of law should not be entered."

¶11 Respondent filed a response with an appendix of documents. He simultaneously filed a motion requesting these documents be sealed. The Oklahoma Bar Association replied, noted some of the documents in respondent's appendix were privileged, and argued statements referencing these documents in respondent's response should be redacted.

¶12 Respondent's response and large appendix as well as the Bar's response (reply) were ordered to be provisionally sealed by this Court until further order by the Court. The respondent's response and appendix are currently filed under seal. Respondent's two sealed filings were reviewed by the Court for the purpose of this proceeding but confidential material therein protected from disclosure by a privilege was not considered. Additionally, non-privileged confidential material and non-confidential material were not considered to the extent their content was unnecessary for review of respondent's conviction for the purpose of a Rule 7 proceeding.

¶13 The Bar replied and argued that respondent "was not being dishonest or deceitful" but "it does appear that Respondent likely crossed the line of being a zealous advocate for his client and handled his interaction with police poorly." The Bar stated: "Although Respondent's behavior could have been better, it does not appear to have eroded the integrity and confidence that the public has in the legal profession." The Bar also stated respondent "has been cooperative during the investigation," "Complainant has not discovered any evidence which would facially demonstrate Respondent's unfitness to practice law," and "Complainant agrees with Respondent that an order of immediate interim suspension is not warranted."

¶14 The Court determined respondent met his first show-cause burden and the Court declined to enter an interim order of suspension. The Court next directed respondent to show cause why a final order of discipline should not be entered. The Court noted respondent may "submit a brief and/or any evidence tending to mitigate the severity of discipline." We also stated "the written return of the lawyer shall be verified and expressly state whether a hearing is desired," and we referenced RGDP, Rule 7.4.

¶15 Respondent's response has an attached letter from respondent which indicates his participation in Lawyers Helping Lawyers and goals for his behavior. Respondent argues final professional discipline should not be entered against him by the Court.

¶16 The Bar replied and states "there has been no interruption of respondent's law license since he was admitted" to practice law in 2004. The Bar argues a final order of discipline should be entered and recommended a public censure as professional discipline.

¶17 After respondent filed his response to the show cause order concerning final discipline, an unsolicited pro se appearance in the disciplinary proceeding was made by the Sheriff of Haskell County, Oklahoma. The Court received two letters from the sheriff, the first dated September 20, 2021, and the second October 21, 2021. The first letter states it was filed to request respondent be held accountable for his actions. The second letter states "[t]his letter serves as a response to Mr. Wagner's letter to show cause as to why he should not be suspended."

¶18 The first letter states the sheriff possesses "my own theories as to why Mr. Wagner called the McAlester police dispatch to falsely report that the police officers were committing the crime of trespassing." The sheriff states respondent had animus directed towards law enforcement and various District Attorneys. He also states respondent's presence at the residence was for the purpose "to harass and annoy, and when he didn't get his way at the scene, he tied up more police resources by calling dispatch and falsely reporting that the officers were committing the crime of trespassing."

¶19 The sheriff also indicates his belief a double standard exists for attorneys versus police officers when members of both groups are being held professionally accountable for not speaking the truth. He argues criminal defense attorneys as a class have attacked police officers' truthfulness by showing in court the officers' inconsistent statements when the statements were merely inconsistent and not dishonest. He argues this type of attack when combined with application of a particular uniform criminal jury instruction eventually causes serious and negative professional results for the officer involved. He argues a double standard is created when a lawyer is found guilty of making a false police report and the lawyer does not receive serious and negative professional discipline for such report. He argues this result is a double standard because a "shockingly inconsistent" standard is being applied.

¶20 The sheriff states respondent was a defense attorney in a Pittsburg County criminal matter and respondent attacked the credibility of a police officer because of the officer's "prior bad acts." However, all of the legal proceedings against the officer were dismissed after property at issue was returned. The sheriff argues respondent "continues to enjoy that benefit of the doubt" concerning his veracity as an officer of the court, but this police officer "will never again enjoy that benefit of the doubt, despite all his [police officer's] cases [against the officer] being dismissed." The sheriff also argues this circumstance regarding how the police officer was treated by the District Court versus respondent's request herein for no discipline shows a "disingenuous and unjust" double standard applied to police officers versus attorneys. The sheriff's letter also states several additional sheriffs in Oklahoma support his request for a suspension to be imposed against respondent.

¶21 The Court allowed respondent an opportunity to file a reply to the sheriff's first letter. Prior to respondent filing his reply, the sheriff filed a second letter complaining of both former and present conduct by respondent. The sheriff again characterizes respondent's purpose at the residence as improper, and states respondent's report of a trespass at the residence was merely "another bullying tactic he [respondent] often employs."

¶22 The sheriff's second letter also states respondent "is still not being honest." The sheriff attaches photocopies of Facebook posts made by both respondent and the "Haskell County Sheriff's Office." The topics of the posts include an administrative personnel policy of the Haskell County Sheriff's Office concerning personnel vaccinations, the respondent's opinion of this administrative policy, the respondent's opinion of the sheriff, and the sheriff's opinion of respondent. The sheriff's letter states respondent was not "a person striving to change and build bridges," but respondent "has the audacity to comment, attack, and accuse three sheriffs in counties where he [respondent] practices regularly--Haskell, Latimer, and Pittsburg."

¶23 Respondent filed his response to the sheriff's first letter. The response references previous disagreements respondent had with the Sheriff of Haskell County. One of these involved a third police officer, allegations by respondent involving the truthfulness of this officer, and also whether this third officer had engaged in improper conduct with citizens. One of respondent's attachments to his response was an order by a judge of an Oklahoma District Court, and the order concluded "the evidence regarding his [the third police officer's] criminal history is admissible to impeach him." The disagreement between the sheriff and respondent attacking this third police officer's credibility was raised by the sheriff in his September 20th letter. Respondent also stated he had not met or interacted with several of the sheriffs who were listed in the September 20th letter as supporting the Haskell County Sheriff's request for respondent's professional suspension.

III. Rule 7 Professional Discipline

¶24 This proceeding is now before the Court for a determination whether final summary professional discipline should be imposed based upon respondent's conviction. Rule 7 may be used when a lawyer "has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law."

¶25 The Bar's recommendation for professional discipline in a Rule 7 proceeding is not treated as binding or persuasive, and every aspect of the Rule 7 proceeding is reviewed de novo in the context of the Court's exercise of an original and exclusive jurisdiction in a lawyer disciplinary controversy.

A lawyer's conviction of some crimes will, by itself, demonstrate such lawyer's unfitness to practice law. On the other hand, a lawyer's conviction for some kinds of illegal conduct will not facially demonstrate the lawyer's unfitness to practice law. This principle is recognized in a Comment to Rule 8.4 of the Rules of Professional Conduct.

State ex rel. Oklahoma Bar Association v. Armstrong, 1990 OK 9791 P.2d 815

Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty or breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation. Comment, 5 O.S.Supp.1988, Ch. 1, App. 3--A, Rule 8.4.

The Comment is also found in a recent version of Rule 8.4 as Comment No. 2 codified at 5 O.S.2011, Ch. 1, App. 3--A, Rule 8.4. A single misdemeanor, or several misdemeanors, may show a lawyer's unfitness to practice law, such as a willful failure to file a tax return, conduct which is expressly mentioned in the Comment.

¶26 The sheriff's letters assert respondent's telephone call to the McAlester Police Department was dishonest and for the purpose of interfering with the search. The Bar Association states respondent was "not being dishonest or deceitful" in his telephone call to the McAlester Police Department. The Bar Association relies upon the content of the phone call. Respondent stated his name, his status representing the property owner, and a statement including (1) he was not provided a copy of the search warrant at the scene of the search, (2) for this reason a trespass was occurring, and (3) trespass charges should be made against the officers making the search.

¶27 Based upon the cognizable record before us in this proceeding, the issue is whether the single conviction of respondent demonstrates an unfitness to practice law. The sheriff discusses a pattern of alleged impermissible and unprofessional conduct by respondent after respondent's conviction by pointing to his Facebook criticism of the sheriff's administrative personnel policy concerning vaccinations. A pattern of repeated criminal offenses can indicate indifference to an attorney's legal obligation and warrant discipline.

¶28 We have noted: "[t]here is practically universal agreement that a major purpose of the First Amendment is to protect the free discussion of governmental affairs.

¶29 The sheriff's assertions are raised in letters after respondent's conviction and in the context of a Rule 7 summary proceeding. We need not determine whether a sheriff or a police officer is "public legal officer" for the purpose of Rule 8.2 or if the Rule applies herein. This is so due to a combination of two related reasons: (1) A due process issue is raised by a professional misconduct allegation made outside of both this specific Rule 7 convictioni.e., publicly on Facebook, or (d) a different and unspecified standard for professional discipline should be created for lawyers concerning the veracity of their speech, or (e) whether respondent's criticisms of the sheriff contain false statements. These various interpretations of the sheriff's complaints require analysis of unadjudicated issues of fact as well as constitutional and nonconstitutional legal issues which are not briefed by the sheriff, the Bar, or respondent. We need not address them in a Rule 7 summary proceeding. However, the sheriff's letters merit an observation.

¶30 In the present instance, an assertion is made that a lawyer is publicly criticizing a sheriff's public personnel policy. The Preamble to the Rules of Professional Conduct states in part: "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials."

¶31 In State ex rel. Oklahoma Bar Association v. Ezell, 2020 OK 55466 P.3d 55121 O.S.2011, § 58921 O.S.2011, § 1958Id. 2020 OK 55

¶32 In Ezell, the Court determined whether the lawyer's convictions demonstrated an "unfitness to practice law." Id. 2020 OK 55Id.

¶33 Respondent's telephone call to the McAlester police officers included respondent's name, identification of his client, and a stated reason or purpose for the telephone call. The McAlester police officers were not impressed with respondent's stated reason for the telephone call, i.e., his assertion of a trespass. No trespass charge was made against a police officer. After respondent's telephone call to the McAlester Police Department, an investigator at the scene informed of the telephone call simply told respondent to go away or be arrested. Respondent's telephone call was unsuccessful for respondent's stated purpose and he left the scene.

¶34 Respondent was found guilty of making a false report of a crime by a jury where he practices law. The jury acquitted respondent on the obstruction charge. We agree with the Bar the facts related to respondent's conviction do not show deceit causing serious consequences for law enforcement as in Ezell. We conclude respondent's conviction does not demonstrate unfitness to practice law.

IV. Conclusion

¶35 Imposition of Rule 7 final summary discipline is based upon a conviction which demonstrates the lawyer's unfitness to practice law. In State ex rel. Oklahoma Bar Association v. Armstrong, 1992 OK 79848 P.2d 538

¶36 The application of the Oklahoma Bar Association for Rule 7 final summary discipline based upon respondent's conviction is denied.

¶37 Darby, C.J.; Kauger, Winchester, Edmondson, Gurich, and Rowe, JJ., concur.

¶38 Kane, V.C.J. (by separate writing); Combs, (by separate writing), and Kuehn, JJ., dissent.

¶39 Kane, V.C.J., with whom Combs and Kuehn, JJ., join, dissenting: "I would follow the Bar's recommendation and publicly censure for the conviction involving the false reporting of a crime."

¶40 Combs, J., dissenting: "I would not have considered the filings of the Sheriff in this disciplinary proceeding."

FOOTNOTES

21 O.S.2011, § 589

infra at ¶ 24.

State ex rel. Okla. Bar Ass'n v. Trenary, 2016 OK 8368 P.3d 801State ex rel. Okla. Bar Ass'n v. Hart, 2014 OK 96339 P.3d 895

State ex rel. Okla. Bar Ass'n v. Dunivan, 2018 OK 101432 P.3d 1056

The clerk of any court within this State in which a lawyer is convicted or as to whom proceedings are deferred shall transmit certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within five (5) days after said conviction. The documents shall also be furnished to the Chief Justice by the General Counsel within five (5) days of receiving such documents. Such documents, whether from this jurisdiction or any other jurisdiction shall constitute the charge and be conclusive evidence of the commission of the crime upon which the judgment and sentence is based and shall suffice as the basis for discipline in accordance with these rules.

2017 OK 104

Upon receipt of the certified copies of Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and the judgment and sentence, the Supreme Court may by order immediately suspend the lawyer from the practice of law until further order of the Court. In an order of suspension the Court may direct the lawyer to file a statement, to show cause, if any the lawyer has, why the order of suspension should be set aside. Upon good cause shown, the Court may set aside its order of suspension when it appears to be in the interest of justice to do so, due regard being had to maintaining the integrity of and confidence in the profession.

Alternatively, upon receipt of the certified copies of Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and the judgment and sentence, the Supreme Court may direct the lawyer to file a statement, to show cause, if any the lawyer has, why an order of immediate interim suspension from the practice of law should not be entered. Upon good cause shown, the Court may decline to enter an order of immediate interim suspension when it appears to be in the interest of justice to do so, due regard being had to maintaining the integrity of and confidence in the profession. If good cause is not shown, the Court may by order immediately suspend the lawyer from the practice of law until further order of the Court.

State ex rel. Okla. Bar Ass'n v. Demopolos, 2015 OK 50352 P.3d 1210State ex rel. Oklahoma Bar Ass'n v. Shofner, 2002 OK 8460 P.3d 1024

See generally, U.S. v. Grubbs, 547 U.S. 90, 98-99, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006) (in response to a claim "that the executing officer must present the property owner with a copy of the warrant before conducting his search," the Court stated "neither the Fourth Amendment nor Federal Rule of Criminal Procedure 41 imposes such a requirement"); Darity v. State, 2009 OK CR 27220 P.3d 731condition precedent to a reasonable search under the Oklahoma Constitution or any act of the Oklahoma Legislature") (discussing Pennington v. State, 1956 OK CR 98302 P.2d 170

State ex rel. Okla. Bar Ass'n v. Zannotti, 2014 OK 25330 P.3d 11see also State ex rel. Okla. Bar Ass'n v. Drummond, 2017 OK 24393 P.3d 207State of Okla. ex rel. Okla. Bar Ass'n v. Kerr, 2012 OK 108291 P.3d 198

State ex rel. Okla. Bar Ass'n v. Friesen, 2015 OK 34350 P.3d 1269State ex rel. Okla. Bar Ass'n v. Livshee, 1994 OK 12870 P.2d 770de novo exclusive, original and nondelegable cognizance in a Rule 7 proceeding.) see also State of Okla. ex rel. Okla. Bar Ass'n v. Elsey, 2019 OK 81455 P.3d 903de novo review of evidence when assessing a lawyer's fitness to practice law, and the interests of the public, courts, and legal profession.).

State ex rel. Okla. Bar Ass'n v. Dunivan, 2018 OK 101432 P.3d 1056State ex rel. Okla. Bar Ass'n v. Cooley, 2013 OK 42304 P.3d 453

State ex rel. Oklahoma Bar Ass'n v. Livshee, 1994 OK 12870 P.2d 770State ex rel. Okla. Bar Ass'n v. Gann, 1995 OK 48895 P.2d 726State ex rel. Okla. Bar Ass'n v. Coleman, 2021 OK 63

See, e.g., State of Okla. ex rel. Okla. Bar Ass'n v. Elsey, 2019 OK 81455 P.3d 903

State ex rel. Okla. Bar Ass'n v. Porter, 1988 OK 114766 P.2d 958citing First National Bank of Boston v. Bellotti, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), Mills v. Alabama, 384 U.S. 214, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966)).

Id. 1988 OK 114

Id. 1988 OK 114

State ex rel. Okla. Bar Ass'n v. Demopolos, supra at n.7. An allegation of professional misconduct used in support of a lawyer's suspension is subject to due process. Demopolos, 2015 OK 50State ex rel. Okla. Bar Ass'n v. Gaines, 2016 OK 80378 P.3d 1212additional or outside the Rule 7 conviction adjudication and mitigation hearing adjudicatory procedure must be part of some other procedure providing due process, such as Rule 6 procedure, when the allegation of misconduct is used for the purpose of seeking to impose professional discipline. Id.

State ex rel. Okla. Bar Ass'n v. Claborn, 2019 OK 14440 P.3d 660State ex rel. Okla. Bar Ass'n v. Bolusky, 2001 OK 2623 P.3d 268State ex rel. Okla. Bar Ass'n v. Stow, 1998 OK 105975 P.2d 869

Id. Preamble: A Lawyer's Responsibilities, at [9].